## THE MAGGIE WILLETT.[1]

*(District Court, D. Massachusetts. April 28, 1886.)*

SALVAGE—AWARD—CIRCUMSTANCES OF UNUSUAL PERIL TO LIFE AND PROPERTY SAVED—REFUSAL OF INADEQUATE COMPENSATION.

The schooner M., while at sea, encountered heavy weather, and in consequence lost her sails, sprang her foremast, carried away her main-boom and gaff, and was otherwise severely crippled. All of her water, cooking utensils, and fuel were washed overboard. Her men were, for five days, left without fuel and water, and suffered severely. When found, she was in the vicinity of a dangerous shoal, upon which she was drifting. In answer to a signal of distress, the D., a fishing schooner, came to her assistance. The crew of the M. were taken on board of the D., and a relief crew from the D., with provisions, fuel, and sails, were placed on board of the M. The D. abandoned her voyage, and convoyed the M. to a port of distress. The time consumed was about three days. The master of the M. offered the master of the D. $1,500 if he would put him aboard of his own vessel, stay by him, and convoy him to port. This offer was refused. *Held,* that the sum offered was inadequate for the service, as it involved the giving up of the D.'s trip, and the salvors were not bound to accept it. The value of the D. was $10,000. The loss by the abandonment of their voyage, though uncertain, was considerable. The value of the M. and cargo was $11,000. The labor of bringing the M. into port, the loss of the D.'s trip, and other circumstances, entitle the salvors to a compensation of one-third of the value of the property saved.

Libel by the owner, master, and crew of the fishing schooner Dido, of Gloucester, against the British schooner Maggie Willett, of St. Johns, New Brunswick, and her cargo, for salvage.

*C. A. Russell* and *F. Dodge,* for libelants.

*Charles T. Russell, Jr.,* for claimant.

---

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

NELSON, J. At sunrise on the morning of December 31, 1885, the Dido, then on a fishing voyage on George's banks, in latitude 41 deg. 9 min. N., and longitude 66 deg. 30 min. W., fell in with the British schooner Maggie Willett, in a disabled condition, flying a signal of distress. It appears from the protest of the master, and the other evidence in the case, that the Maggie Willett sailed from Halifax on the twenty-fifth of December, 1885, bound for New York, with a cargo of dried and pickled fish. On the day following she encountered a violent gale from N. E., in which all her sails were torn or blown away, her main-boom and gaff broken, her foremast sprung, the coat around her mainmast damaged, her bulwarks and galley broken in, her house started, and her boats, galley-stove, and all her water, fuel, and cooking utensils washed overboard by the seas. The place where she was discovered was in the vicinity of dangerous shoals, upon which she was drifting. Her men had been without fresh water for five days, and were suffering severely from hunger, thirst, and cold. They were taken on board the Dido, and their wants supplied. Afterwards six men from the crew of the Dido were put on board of her, with provisions and fuel, and the Dido's stay-sail and riding-sail, and she was then taken in tow by the Dido, and started for Gloucester. After towing 13 hours the tow-line parted, and from that time she proceeded under the riding and stay sails and the remnants of her own sails, the Dido accompanying her, and arrived in Gloucester the morning of January 3d. The disputed points were whether the master of the Dido took any unfair advantage in getting possession of the Maggie Willett, and was justified afterwards in retaining possession of her.

There is no evidence in the case to sustain the defense that the Dido's men, by exaggerating the danger, worked upon the fears of the men on the Maggie Willett, for the purpose of getting possession of her. The extreme peril of the situation was recognized by all, and Capt. Bissett, of the Maggie Willett, admits that he was taken off at his own request. When first spoken by the Dido, Capt. Bissett asked to be supplied with water and sails, and was answered that water could be furnished, but that the Dido had no spare sails. As two sails from the Dido were afterwards used in navigating the Maggie Willett to Gloucester, the inference is drawn that in refusing to supply them Capt. Thomas, of the Dido, did not act in good faith. But the explanation is simple and satisfactory. The riding-sail and stay-sail were the sails used on the fishing ground for keeping the vessel in position while the crew were engaged in fishing, and were indispensable for that purpose. Without them the voyage would have to be abandoned. She had no spare sails which she could furnish if she continued on the fishing ground. She could be navigated without them, but her men could not fish. There was no misrepresentation when they were refused. Capt. Bissett states in his protest that before starting for Gloucester he requested to be put aboard his vessel

again, and this was refused. But in his deposition he swears that he offered Capt. Thomas $1,500 if he would put him aboard, and stay by him till he got to Gloucester, and this was refused. This offer the salvors were not bound to accept. The sum offered was quite inadequate for the service to be rendered, as it involved the giving up of the Dido's trip. The offer of Capt. Bissett could hardly have been made in good faith, since neither he nor his men were in a condition to take charge of the vessel, and the men refused to return on board, as they had a right to do.

I find no evidence in the case to sustain the charge of misbehavior on the part of the men on the Dido. On the contrary, their conduct seems to have been humane and considerate in every respect.

Considering the desperate condition of the Maggie Willett when rescued, the labor of bringing her into port, and the loss of the Dido's trip, a very liberal compensation should be decreed. The value of the Dido and her outfit was $10,000. The loss by the abandonment of her voyage, though uncertain, was undoubtedly considerable. The value of the Maggie Willett and her cargo was $11,-000. In a case very similar to this in its circumstances, where the value of the ship and cargo saved was $90,000, Judge LOWELL gave one-fourth of the value. *The Lovett Peacock*, 1 Low. 143. As the value in this case was less, I think the proportion should be larger, and shall decree one-third, or $3,667. I make no order as to the distribution among the salvors of the amount awarded, as it was stated at the hearing that they would agree upon a distribution.

Decree for the libelants for $3,667, with costs.